# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Kucharski*, 2013 IL App (2d) 120270**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN C. KUCHARSKI, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0270 |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution arising from defendant's actions in accessing his former girlfriend's MySpace page and posting comments and a photograph of her, his convictions for harassment through electronic communications were upheld over his contentions that the harassment statutes were unconstitutional and the evidence was insufficient to prove his guilt beyond a reasonable doubt, since the alterations were clearly obscene for purposes of the statute, the statute was not vague or overbroad, and the evidence established that defendant altered the victim's page with the intent to harass her; however, his conviction for unlawful use of encryption was reversed on the ground that changing a password did not constitute "encryption" for purposes of the statute. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-CM-6832; the Hon. Brian J. Diamond, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

Counsel on
Appeal

Richard J. Dvorak, of Law Offices of Richard Dvorak, of Oak Brook Terrace, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1      Following a bench trial, the defendant, Steven C. Kucharski, was convicted of two counts of violating the Harassing and Obscene Communications Act (the Act or the electronic harassment statute) (720 ILCS 135/1-2(a)(1), (a)(2) (West 2008)), and one count of unlawful use of encryption (720 ILCS 5/16D-5.5(b)(1) (West 2008) (the encryption statute) (amended by Pub. Act 96-1551, art. 5, § 5-5 (eff. July 1, 2011)); now 720 ILCS 5/17-52.5 (West 2010)). On appeal, the defendant argues that his convictions should be reversed because the statutes at issue are unconstitutional. Alternatively, he challenges the sufficiency of the evidence and argues that he was not proved guilty beyond a reasonable doubt. For the following reasons, we affirm the defendant's convictions of harassment through electronic communications but reverse his conviction of unlawful use of encryption.

¶ 2                                    I. BACKGROUND

¶ 3      On November 25, 2009, the defendant was charged by criminal complaint with attempted identity theft (720 ILCS 5/8-4(a) (West 2008)) (count I), harassment through electronic communications (720 ILCS 135/1-2(a)(2) (West 2008)) (count II), harassment through electronic communications (720 ILCS 135/1-2(a)(1) (West 2008)) (count III), and unlawful use of encryption (720 ILCS 5/16D-5.5(b)(1) (West 2008) (now 720 ILCS 5/17-52.5(b)(1) (West 2010))) (count IV).

¶ 4      Count I alleged that the defendant committed attempted identity theft by taking a substantial step toward the commission of that offense by knowingly, without authority, using personal identifying information (a computer password) of the victim without the victim's express permission. Count II charged the defendant with "knowingly interrupting, with the intent to harass [the victim], the electronic communication service, being transmissions by a computer through the Internet, of [the victim]." Count III charged that the defendant knowingly "accessed the MySpace.com social networking website of [the victim] and changed the personal webpage of [the victim] and made the comment 'Need a blow job?

-2-

My dad buys them for my boyfriends!' which is lewd, with the intent to offend [the victim]." Finally, count IV charged unlawful use of encryption in that the defendant "knowingly used or attempted to use encryption" to promote the offense charged in count III by changing the victim's MySpace password, thereby "using a disruptive measure via computer to prevent [the victim's] access to the MySpace.com global computer network."

¶ 5      On May 10, 2011, a bench trial was held. The victim testified that the defendant had been her boyfriend for 2½ years. They broke up prior to August 2009 and they were not on good terms. While they were dating, the defendant created a MySpace account for her because she was "kind of computer illiterate." She and the defendant, but nobody else, knew the password to that account. She was not aware that an email account was set up in association with the MySpace account. When she and the defendant broke up, she changed the password on the MySpace account "probably about five times just to make sure."

¶ 6      On August 21, 2009, she noticed that her MySpace page had a picture of her in a thong along with her name, address, phone numbers, and other information about her family. The items about her family included "stuff about Kentucky, me being a slut, about my father, things like that." She had not made these changes to her MySpace account and she did not know when they were made. She identified People's Exhibit No. 3 as her MySpace page on that date. The photo on the page, of her in a thong, was taken by the defendant with his cell phone about five to six months prior. She gave the defendant permission to take the photo. However, when they broke up, she asked him to remove the photo from his cell phone. She did not give anyone permission to post the photo on MySpace. The alterations to her page made her feel degraded, hurt, and upset.

¶ 7      After observing her MySpace page as it appeared in People's Exhibit No. 3, the victim called the defendant and told him to remove everything or she was going to call the police. The defendant started "giggling and laughing" and told her that she deserved it. The victim testified that she then called the police. Deputy Ben Hecht came to her house. She told the deputy that she suspected that the defendant had altered her MySpace page. She noticed that her MySpace page was again altered about two hours later on the same day. The photo and all her personal information was removed–her page was essentially deleted. She had not deleted the page. She was unable to delete the page herself because her password had been changed.

¶ 8      A review of People's Exhibit No. 3 reveals the following. A box in the upper left corner of the page includes the victim's name below the word "Whore" and also states "Mood: slut." The box includes the photo of the backside of the victim, who is bending forward and wearing only a thong. Next to the photo, it states: "Need a blow job? My dad buys them for my boyfriends." Another box states "Whore's Interests" and includes the victim's address and phone number. Another box, entitled "Whore's Blurbs," states:

"About me:

I'm a slut with no education. I'm gonna end up with 2 different baby daddys and I cant even get a GED. worst of all my dad buys my boyfriends blow jobs."

It then states "call me" and includes the victim's name and phone number. The same box includes the following:

"Who I'd like to meet:

my baby nephew! I cant go see him he lives in kentucky and I live in Illinois. I'm to ignorant to go visit I'd rather be in a club sucking dick. O and my mom so I can blaze a joint with her."

¶ 9        Deputy Hecht testified that he worked in the patrol division of the Du Page County sheriff's office. On August 21, 2009, he was dispatched to the victim's home. The victim showed him her MySpace page on her computer. Deputy Hecht testified that what he saw was consistent with People's Exhibit No. 3, a printed copy of what appeared on the victim's computer. The victim had provided him with the defendant's name. He called the defendant's home phone number and spoke with someone. He explained that he needed to speak with the defendant. The investigation was then turned over to Detective David Chiesa.

¶ 10       Detective Chiesa testified that he was assigned to the detective division of the Du Page County's sheriff's office. He investigated computer-related offenses and had received extensive training in that regard. He was assigned to investigate the present case in September 2009. After speaking with the victim, he sent a search warrant to MySpace to obtain information regarding the victim's MySpace account. People's Exhibit No. 2 were the documents he received from MySpace in compliance with the warrant. Individual MySpace accounts can be identified by a web address, also known as a universal resource locator, which is a numerical designation assigned to the account. The number associated with the materials he received was *****9311. Additionally, there was an email address associated with the MySpace account. The email address was "***steve21@yahoo.com."

¶ 11       Detective Chiesa further testified that he subpoenaed, from Comcast, the Internet protocol (IP) addresses associated with the victim's MySpace account. People's Exhibit No. 1 was the information he received from Comcast. He explained that an IP address is a series of numbers separated by dots or decimal points, which identifies an individual computer on the Internet at a specific time. At any given time on the Internet, no IP addresses are the same. He testified that the subpoenaed information showed that, at certain dates and times, certain computers had accessed the victim's MySpace account. Specifically, between August 18 and 21, 2009, two IP addresses had accessed the victim's MySpace account. The first IP address accessed the account on August 18, 2009, at 1:15 a.m. and at 1:18 a.m. and on August 21, 2009, at 5:23 p.m. and 5:27 p.m., all times being PST. The subscriber associated with this IP address was Paul Kucharski, the defendant's father, at a service address that was the same as the defendant's home address.

¶ 12       Detective Chiesa testified that the purpose of having email addresses associated with MySpace accounts was so that a user could receive information via the messaging utility, update his or her account information, and receive notifications of things posted to the account. He testified that at one point, if you were to change your password, the new password would go to the email address. He was not sure if that still happened, as MySpace had changed its account settings numerous times.

¶ 13       On cross-examination, Detective Chiesa acknowledged that he had not determined how many people resided at the defendant's home address, how many people had access to the IP address at the home address, or how many computers were in the home. He had also not

interviewed anyone who resided at the address. Thereafter, the State rested. People's Exhibits No. 1, No. 2, and No. 3 were admitted without objection.

¶ 14   The defendant made a motion for a directed finding. Defense counsel argued that there was no evidence that the defendant was the one who altered the victim's MySpace page. Specifically, the defense argued that the State had proved that it was altered from a computer at the defendant's home address, but the alteration could have been done by a family member or a friend. The State argued that it had proved that the defendant altered the MySpace page, because the defendant had the motive, the knowledge, and the photo. The State argued that, as to count II, the MySpace page was interrupted when it was changed through different transmissions by the defendant. The State argued that this was clearly done by the defendant with an intent to harass the victim. As to count III, the State argued that it had shown that the website was changed and certain comments were made. The changes were obscene and made without the victim's permission and with the intent to offend. Following argument, the trial court found that the State had met its burden at that point and denied the defendant's motion for a directed finding.

¶ 15   Paul Kucharski testified to his home address and stated that he lived there with his wife, his son the defendant, and a younger son. He remembered that a police officer had contacted him in mid-August 2009. After he spoke to the police officer, he spoke to his younger son. His younger son, who was proficient on a computer, then "went and proceeded to go to the computer and take away some stuff off the computer, to the best of my knowledge." He testified that his younger son had shown him pictures of the victim provocatively dressed prior to August 2009. The defense rested.

¶ 16   The trial court found the victim's testimony credible. Specifically, it found that (1) the defendant had set up the MySpace account for the victim, that it was her account, and that only the victim and the defendant knew the password; (2) a computer at the residence where the defendant lived had accessed the victim's MySpace account; (3) the photo on People's Exhibit No. 3 was taken by the defendant on his cell phone; and (4) the alteration to the MySpace posting was clearly done to harass the victim. The trial court noted that the victim had changed her MySpace password five times after she broke up with the defendant, yet the password was still changed without her knowledge, which prevented her from accessing the account. "This suggested someone who was intimately familiar with the details of the account, such as the individual who had set it up." The trial court noted that the defendant had the motive and made statements to the victim that she deserved it. The trial court further noted that the MySpace page was taken down within a couple of hours after the victim called the defendant. The trial court found that the defendant's father's testimony was not credible and was simply "a father trying to help out his son." The trial court determined that, based on the totality of the evidence, both circumstantial and direct, the defendant was proved guilty beyond a reasonable doubt of each charge.

¶ 17   Thereafter, the defendant was granted leave to substitute attorneys. The defendant filed a posttrial motion requesting dismissal of all the charges, arguing both that the statutes were unconstitutional based on vagueness and that there was insufficient evidence. The trial court granted the motion in part, vacating the conviction on count I, but upholding the remaining convictions. The trial court noted that the statute at issue in count I had been declared

unconstitutional by our supreme court a few weeks prior to trial. The trial court found that the statutes that were the bases for the charges in counts II, III, and IV were not vague, because they adequately informed the defendant of the nature of the offenses such that the defendant was able to sufficiently prepare a defense. The trial court further noted that the statutes at issue did not infringe on the defendant's first amendment rights or pertain directly to constitutionally protected speech. Finally, the trial court determined that there was sufficient evidence to find the defendant guilty beyond a reasonable doubt of each charge.

¶ 18　　On February 9, 2012, the trial court sentenced the defendant to two years' conditional discharge on count II. The trial court stated that it was not sentencing the defendant on count III or IV. At a hearing on March 7, 2012, the trial court noted that it had sentenced the defendant only on one count because it assumed there was a one-act, one-crime issue. However, it never allowed the parties to address the issue. Accordingly, it requested that the parties do so. The State argued that there was no one-act, one-crime issue, because counts II through IV were based on separate acts. The State argued that count IV was based on changing the password, count III was based on accessing the website and posting the obscene comments and photo, and count II was based on interrupting communication. The defendant argued that the statutes were too vague for him to know whether multiple convictions were a violation of the one-act, one-crime doctrine. The trial court found the State's argument persuasive and sentenced the defendant to concurrent two-year terms of conditional discharge on counts III and IV, to run concurrently with the sentence on count II. Following the denial of his oral motion to reconsider the sentence, the defendant filed a timely notice of appeal.

¶ 19　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　　　　A. Electronic Harassment: Making an Obscene Comment

¶ 21　　The defendant's first contention on appeal is that his conviction on count III, harassment through electronic communications (720 ILCS 135/1-2(a)(1) (West 2008)), should be reversed because the statute is unconstitutional or, alternatively, there was insufficient evidence to support his conviction. Section 1-2(a)(1) of the Act prohibits the use of electronic communications to make any comment "which is obscene with an intent to offend." *Id.* With respect to his constitutional argument, the defendant contends that the statute proscribes only certain types of obscene speech, namely, obscene speech that is intended to offend others, and that it therefore amounts to content-based discrimination in violation of the first amendment to the United States Constitution (U.S. Const., amend. I). In so arguing, the defendant relies on *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 383-84 (1992), in which the Supreme Court stated:

"[A]reas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)–not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content. Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government." (Emphases in original and omitted.)

Based on the foregoing, the defendant reasons that, although it is constitutionally permissible to criminalize obscene speech, it is not permissible to criminalize only obscene speech that is intended to offend another person.

¶ 22     We find the defendant's argument and reliance on *R.A.V.* unpersuasive. The *R.A.V.* court went on to explain:

"The concurrences describe us as setting forth a new First Amendment principle that prohibition of constitutionally proscribable speech cannot be 'underinclusiv[e],' *** [*i.e.*, that] 'a government must either proscribe all speech or no speech at all' ***. That easy target is of the concurrences' own invention. In our view, the First Amendment imposes not an 'underinclusiveness' limitation but a 'content discrimination' limitation upon a State's prohibition of proscribable speech." (Emphasis omitted.) *Id.* at 387.

In the present case, criminalizing only obscene communication that is made with "an intent to offend" does not amount to content-based discrimination but, rather, is an attempt to regulate the *conduct* that accompanies the proscribed speech. "Speech may not be proscribed because of the ideas it expresses, but it may be restricted because of the manner in which it is communicated or the action that it entails." *Bergman v. District of Columbia*, 986 A.2d 1208, 1220 (D.C. 2010) (citing *R.A.V.*, 505 U.S. at 385). In other words, speech may be restricted when it "embodies a particular intolerable (and socially unnecessary) *mode* of expressing whatever idea the speaker wishes to convey." (Emphases in original and omitted.) *R.A.V.*, 505 U.S. at 393. Here, an obscene electronic communication made with "an intent to offend" is restricted by the statute not because its content communicates any particular idea; rather, it is restricted because of the purpose for which it is communicated. Accordingly, there is no content-based discrimination and the defendant's constitutional argument necessarily fails.

¶ 23     Alternatively, the defendant argues that the evidence was not sufficient to prove him guilty of count III beyond a reasonable doubt. When reviewing the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). In making this determination, the "reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses." *People v. Phelps*, 211 Ill. 2d 1, 7 (2004). A conviction based on circumstantial evidence must rest on proof of a conclusive nature that tends to lead to a satisfactory conclusion and produces a reasonable and moral certainty that the defendant and no one else committed the crime. *People v. Williams*, 66 Ill. 2d 478, 484-85 (1977). This court will not disturb a guilty verdict unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. *People v. Brandon*, 197 Ill. App. 3d 866, 874 (1990).

¶ 24     To prove defendant guilty of harassment through electronic communications as charged in count III (720 ILCS 135/1-2(a)(1) (West 2008)), the State had to show that the defendant used electronic communication to make an obscene comment with an intent to offend. The defendant does not argue that the State failed to show that the alterations to the MySpace page were done with an intent to offend. Rather, the defendant argues only that (1) there was

insufficient evidence to show that he altered the MySpace page and (2) the alterations were not "obscene."

¶ 25    Turning to the first argument, the defendant notes that the account that accessed the victim's MySpace page from the defendant's home address was in his father's name and that multiple household members had access to that account. The defendant also notes that he never admitted to making the alterations and that mere suspicion was not enough to convict him. We hold that the evidence created more than a mere suspicion that the defendant had altered the MySpace page.

¶ 26    It is the function of the trier of fact to assess the credibility of the witnesses, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). In this case, the trial court specifically found the victim's testimony credible. The victim testified that after she noticed the changes on her MySpace page she called the defendant, who laughed at her and told her she deserved it. The victim also testified that she and the defendant had broken up and were not on good terms at the time her MySpace page was altered. The defendant therefore had the motive to alter the MySpace page. Additionally, the defendant had the photo; the trial court found that the defendant had taken the photo of the victim with his cell phone. The victim also testified that the defendant helped her create her MySpace page, that only she and the defendant knew the password, and that she did not make the changes at issue. Although the victim testified that she changed her password, the evidence also showed that the victim's MySpace page had been accessed by a computer from the defendant's home address. Although there were multiple household members in the defendant's home with computer access, only the defendant had the motive to alter the victim's MySpace page. Based on the foregoing, we cannot say that the evidence was so unsatisfactory as to create a reasonable doubt of the defendant's guilt.

¶ 27    The defendant next argues that the State failed to prove that the alterations to the MySpace page were "obscene" as a matter of law. The defendant notes that the statute at issue does not define "obscene" and argues that "obscene" should therefore be interpreted using the same definition set forth in Illinois's obscenity statute (720 ILCS 5/11-20(b) (West 2008)), which incorporates the three-part test of obscenity established in *Miller v. California*, 413 U.S. 15, 24 (1973). *Miller*, which dealt with the mailing of materials advertising books and a film, characterized as obscene those materials "which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Id.* Under that standard, the defendant argues that material is not obscene unless it can be considered "hard-core pornography" that is in some sense "erotic." The defendant acknowledges that the words accompanying the photograph were "rude comments meant to ridicule [the victim]" but argues that, in light of current community standards, the MySpace page cannot be considered hard-core pornography or erotic. In response, the State argues that the word "obscene" as used in section 1-2(a)(1) should not be interpreted in accordance with the definition in the obscenity statute but, rather, should be given its common dictionary definition.

¶ 28    This argument presents an issue of statutory construction. In construing a statute, our task

is to ascertain and give effect to the legislature's intent. *People v. Zakarauskas*, 398 Ill. App. 3d 451, 453 (2010). The best indicator of the legislature's intent is the plain language of the statute. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006). However, "[a] statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended." *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993).

¶ 29     In determining how to define "obscene" within the context of section 1-2(a)(1), we find *People v. Hernandez*, 283 Cal. Rptr. 81 (Cal. Ct. App. 1991), persuasive. In *Hernandez*, the court interpreted the meaning of "obscene" as used in a statute related to unlawful telephone communications. In relevant part, the statute at issue (Cal. Penal Code § 653m) prohibited telephone calls in which the caller (1) telephoned another with the intent to annoy and (2) used obscene language to or about the other person. *Id.* at 83-84. The court concluded that the ordinary dictionary definition should be used, based on the legislative intent behind section 653m and "the distinction between telephone harassment communications and other forms of speech subject to *Miller*." *Id.* at 85. Specifically, the court noted:

> "The purpose of the statute was to protect an individual's right to privacy from annoying intrusions. Accordingly, language that qualifies as 'obscene' under a common or dictionary definition would fall within the meaning of the statute. The Legislature did not intend to deter intentional and annoying telephone calls containing 'obscene' language dealing with sex and appealing to the prurient interest under the *Miller* standard, while exempting equally annoying telephone calls containing language that would be considered 'obscene' under a common or dictionary definition." *Id.*

¶ 30     The court further acknowledged that the California Supreme Court adopted the *Miller* standard for obscenity crimes (Cal. Penal Code §§ 311 to 312.5) that involved "obscene matter" and " 'obscene live conduct.' " *Id.* at 86. The court noted, however, that conduct under section 653m did not qualify as obscene matter or obscene live conduct as defined in section 311 (Cal. Penal Code § 311). It reasoned, therefore, that there was no statutory intent to relate telephone harassment offenses to obscenity crimes. Finally, the court noted that numerous other jurisdictions had applied a common dictionary definition of "obscene" when used within the context of a telephone harassment statute. *Id.* at 87 (" 'a telephone harassment statute deals with different concerns than do statutes which seek to control literary or artistic content' " (quoting *State v. Kipf*, 450 N.W.2d 397, 405 (Neb. 1990)); see also *id.* (citing *State v. Crelly*, 313 N.W.2d 455, 457 (S.D. 1981), *State v. Keaton*, 371 So. 2d 86, 92 (Fla. 1979), *State v. Jaeger*, 249 N.W.2d 688, 691 (Iowa 1977), and *Baker v. State*, 494 P.2d 68, 70-71 (Ariz. Ct. App. 1972)).

¶ 31     In the present case, the electronic harassment statute resulted from amendments to the "Obscene Phone Call Act." See Pub. Act 90-578 (eff. June 1, 1998). The electronic harassment statute has a purpose similar to the telephone harassment statute at issue in *Hernandez*: to prevent the personal invasion into people's homes and lives by harassing communication via telephone or other electronic devices. *People v. Karberg*, 356 Ill. App. 3d 500, 503 (2005); see also 90th Ill. Gen. Assem., House Proceedings, May 31, 1997, at 265-66 (statements of Representative Burke that "Obscene Phone Call Act" was being

amended to include electronics because "people can indeed begin to invade our homes and our lives through means of electronic devices"); 90th Ill. Gen. Assem., Senate Proceedings, Mar. 19, 1997, at 58 (statements of Senator Radogno that amendment of the "Obscene Phone Call Act" to include electronic communications is a recognition that obscene phone calls are not the only form of electronic harassment).

¶ 32    Although the Illinois obscenity statute does define "obscene" in accordance with the *Miller* standard, the purpose of the obscenity statute is to control the commercial dissemination of obscenity. See 720 ILCS Ann. 5/11-20, Committee Comments-1961, at 499 (Smith-Hurd 2002). Accordingly, based on the differing purposes between the electronic harassment statute and the obscenity statute, it would be unreasonable to apply the definition of "obscene" from the obscenity statute when interpreting the electronic harassment statute. *Hernandez*, 283 Cal. Rptr. at 85; *Kipf*, 450 N.W.2d at 405 ("a telephone harassment statute deals with different concerns than do statutes which seek to control literary or artistic content"). There is no indication that the legislature intended to relate harassment offenses, via telephone or other electronic devices, to obscenity crimes. As in *Hernandez*, the legislature could not have intended to deter harassing electronic communications containing "obscene" matter under the *Miller* standard, while exempting equally invasive electronic communications that would be considered "obscene" under a common dictionary definition.

¶ 33    *Baker*, 494 P.2d 68, cited by the State, further supports this determination. In *Baker*, the Arizona appellate court addressed an argument that a statute, which made it unlawful to telephone another person and use obscene language with an intent to offend, was unconstitutionally vague. *Id.* at 69. The court, which had to interpret the word "obscene" as used within that statute, noted that the statute did not define "obscene." *Id.* at 70. The court held that the statute was directed not at the communication of thoughts or ideas but at conduct, namely, the use of the telephone to offend people by the use of obscene language. *Id.* The court noted that the statute at issue was not an obscenity statute and that it would be "inane" to interpret the word "obscene" as in the context of *Miller* when dealing with obscene phone calls. *Id.* at 71. Accordingly, the court afforded the word "obscene" its ordinary dictionary definition: "[l]ewd, impure, filthy, offensive to modesty or decency." *Id.*

¶ 34    Essentially, the *Baker* court distinguished between telephone harassment statutes, which seek to protect an individual from harassing telephone calls in the privacy of his home, and obscenity statutes, which seek to regulate the communication of thoughts and ideas. The court held that, because the telephone harassment statute included a specific intent element, it involved constitutionally unprotected conduct. *Id.* at 70. This distinction applies equally in the present case. The Act contains an intent element, and is therefore primarily concerned with regulating conduct rather than regulating the communication of thoughts or ideas.

¶ 35    Based on the foregoing, we agree with the State that the *Miller* standard has no application here. Rather, "obscene" as used in the electronic harassment statute should be afforded its ordinary dictionary definition: "disgusting to the senses" or "abhorrent to morality or virtue." See Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/obscene (last visited Jan. 17, 2013). The defendant does not argue that under the ordinary dictionary definition the alterations to the MySpace page were not obscene. He arguably, therefore, conceded this point. Even absent any concession, the photo

and the commentary included on the altered MySpace page were clearly abhorrent to morality and virtue and, therefore, "obscene."

¶ 36                          B. Electronic Harassment: Interrupting

¶ 37    The defendant's second contention on appeal is that his conviction on count II, harassment through electronic communications in violation of section 1-2(a)(2) (720 ILCS 135/1-2(a)(2) (West 2008)), should be reversed because the statute is unconstitutionally vague and overbroad on its face or, alternatively, the evidence was insufficient to prove him guilty beyond a reasonable doubt. We will first address the defendant's argument that the statute is void for vagueness. Section 1-2(a)(2) provides that it is unlawful to "[i]nterrupt[ ], with the intent to harass, the telephone service or the electronic communication service of any person." *Id.*

¶ 38    We begin with the presumption that a statute is constitutional, and the burden of establishing that it is not must be borne by the party challenging its validity. *People v. Law*, 202 Ill. 2d 578, 582-83 (2002). If reasonably possible, we must construe a statute so as to affirm its validity and constitutionality. *People v. Greco*, 204 Ill. 2d 400, 406 (2003). Whether a statute is constitutional is a question of law, which we consider *de novo*. *Law*, 202 Ill. 2d at 582.

¶ 39    "A defendant can challenge a statute as unconstitutionally vague on its face or as applied to the defendant's actions." *People v. Molnar*, 222 Ill. 2d 495, 524 (2006).

> "A criminal law may be declared unconstitutionally vague for either of two independent reasons. First, the statute may fail to provide the kind of notice that would enable a person of ordinary intelligence to understand what conduct is prohibited. [Citations.] Second, a statute may be declared unconstitutionally vague if it fails to provide explicit standards for those who apply it, thus authorizing or even encouraging arbitrary and discriminatory enforcement. [Citations.]" *Law*, 202 Ill. 2d at 582-83.

The defendant argues that the statute is unconstitutionally vague in both of these ways.

¶ 40    At the outset, we note that, to succeed on a vagueness challenge to a statute that does not involve a first amendment right, a party must establish that the statute is vague as applied to the conduct for which the party is being prosecuted. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291 (2003). In other words, a statute that does not impact first amendment rights "will not be declared unconstitutionally vague on its face unless it is incapable of any valid application." *People v. Izzo*, 195 Ill. 2d 109, 112 (2001). In the present case, the statute does not affect first amendment rights, as it prohibits conduct rather than speech. Thus, the defendant's argument that the statute is vague on its face necessarily fails because, by arguing that the statute is subject to arbitrary enforcement, the defendant thereby concedes that the statute can be validly applied in some situations. *People v. Winningham*, 391 Ill. App. 3d 476, 481 (2009).

¶ 41    However, assuming that the statute in some way impacts first amendment rights, the defendant's argument that the statute is vague on its face still fails. The defendant first contends that the statute is vague in that "no ordinary person could determine what it means to 'interrupt, with the intent to harass, *** the electronic communication service of any

person.' " Specifically, the defendant argues that the term "interrupt" is not defined in the statute. Nonetheless, the word "interrupt" is within the daily vocabulary of ordinary people. Interrupt means "to stop or hinder by breaking in" or "to break the uniformity or continuity of." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/interrupt (last visited Jan. 17, 2013). In construing a statute, courts give words their plain and ordinary meanings. *In re M.T.*, 221 Ill. 2d 517, 524 (2006); *People v. Fabing*, 143 Ill. 2d 48, 54 (1991) (absent contrary legislative intent, a court will assume the words used in a statute have their ordinary and popularly understood meanings when assessing the constitutionality of the statute). The Merriam-Webster Online Dictionary contains such plain and ordinary definitions. The use of dictionary definitions to illustrate the commonly understood meaning of a term is well accepted. See *M.T.*, 221 Ill. 2d at 535 (quoting Webster's Third New International Dictionary in construing the criminal statute at issue there). The defendant provides no support for his assertion that the terms "with intent to harass" and "the electronic communication service" are unconstitutionally vague, and any such argument is therefore forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006); *Mikolajczyk v. Ford Motor Co.*, 374 Ill. App. 3d 646, 677 (2007); see also *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005) (a reviewing court "is not simply a repository in which appellants may dump the burden of argument and research"). We therefore reject the defendant's argument that the statute is so vague that a person of ordinary intelligence is left to guess at the conduct it proscribes.

¶ 42    The defendant also argues that the statute is subject to arbitrary enforcement. The defendant supports this argument by stating that neither the complaint, the State, nor the trial court notified him as to how he committed the offense. We acknowledge that a statute so vague that it provides no guidelines for law enforcement "may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)). Nonetheless, the statute at issue provides sufficient standards so that its application does not depend merely on the prosecutor's or trial court's personal predilections. The provision requires a determination as to whether a defendant interrupted another's electronic communication service, here, a MySpace account, with the intent to harass. This provision leaves no discretion to law enforcement. The application of the plain meaning of the statutory language in light of the purpose of the statute prevents arbitrary enforcement.

¶ 43    The defendant also argues that the first amendment is implicated because one could violate the statute if he were involved in an "instant messaging" political exchange and he were "harassingly" interrupting the other person. This is the extent of the defendant's argument that the statute is overbroad. This argument is also without merit. A statute is not overbroad if it does not impinge on any first amendment freedoms. *People v. Boand*, 362 Ill. App. 3d 106, 139-40 (2005). As noted above, this statute does not impinge on first amendment freedoms, because it prohibits conduct rather than speech. Moreover, the defendant's example of overbreadth is not persuasive. As noted by this court in *People v. Taylor*, 349 Ill. App. 3d 839, 843-44 (2004):

   "The court's earlier opinion in *People v. Klick*, 66 Ill. 2d 269, 274 (1977), confirms that 'harass' in section 1-1(2) [of the telephone harassment statute] cannot include the

-12-

less serious actions the word sometimes implies. *** Evidently, then, if a prohibition on a call made with intent to harass is not constitutionally offensive, the level of emotional distress or discomfort the caller intended to produce must be substantially greater than mere annoyance.

The *Klick* court also explicitly noted that the law must not improperly impede speech delivering a rebuke or expressing a dispute:

'We do not suggest that the first amendment gives one the unlimited right to annoy another, by speech or otherwise. There are, however, many instances when, without breaching the peace, one may communicate with another with the possible intention of causing a slight annoyance in order to emphasize an idea or opinion, or to prompt a desired course of action that one is legitimately entitled to seek. *** First amendment protection is not limited to amiable communications.' *Klick*, 66 Ill. 2d at 274."

Accordingly, the defendant's argument that the statute impinges on a first amendment right to engage in an "instant messaging" political exchange is without merit. The defendant's argument would be successful if "harass" as used in the electronic harassment statute were defined to mean an "annoyance." However, "harass" as used in the electronic harassment statute requires much more than an "annoying" interruption. It requires that the interruption be made with the intent to produce emotional distress or discomfort substantially greater than mere annoyance. *Id.*; see also *People v. Grever*, 222 Ill. 2d 321, 331 (2006) (it is a "general rule of statutory construction that when the same words appear in different parts of the same statute, they should be given the same meaning absent some contextual indication that the legislature intended otherwise"). The defendant's described "instant messaging" political exchange does not rise to this level.

¶ 44    Finally, the defendant argues that the evidence was insufficient to convict him. Specifically, he argues that there was no evidence that he changed the password and, even if he had, it was his MySpace account. We find the defendant's arguments unpersuasive. First, the defendant interrupted the victim's electronic communication service when he removed her original MySpace page and changed the password so she could no longer make changes to her own page. There was significant circumstantial evidence that the defendant was responsible for these actions. Records showed that a computer from the defendant's home had accessed the victim's MySpace account, and the defendant had both the motive and the knowledge. The victim testified that, after her relationship with the defendant ended, they were not on good terms. The victim also testified that the defendant helped her create her MySpace page and that only she and the defendant knew the password. Although the victim testified that after she and the defendant stopped dating she changed her password, the evidence also showed that the victim's MySpace page had been accessed by a computer from the defendant's home address. At oral argument, defense counsel conceded that the account was set up such that every time a password change was made, the defendant was notified by email of the new password.

¶ 45    The defendant also argues that it was a shared MySpace account, belonging to both him and the victim, so he could not have changed the password "of any person." However, the

trial court found that the MySpace account belonged to the victim alone and we decline to disturb that determination. See *Sutherland*, 223 Ill. 2d at 242. The defendant also argues that, because the webpage was removed within two hours after the victim called and asked him to remove it, there was no evidence that he interrupted access to her webpage with the "intent to harass." We find this argument disingenuous. Merely because the page was deleted within two hours after the victim complained is no indication that he had not accessed the victim's MySpace page and altered it with the intent to harass the victim.

¶ 46                                    C. Unlawful Use of Encryption

¶ 47        The defendant's final contention on appeal is that his conviction on count IV, unlawful use of encryption (720 ILCS 5/16D-5.5(b)(1) (West 2008)), should be reversed because the statute is unconstitutional and, alternatively, there was insufficient evidence on which to convict him. We agree that there was insufficient evidence to convict the defendant on this count and therefore do not reach his constitutional challenges to the encryption statute. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 286 (2009) (constitutional issues should be considered only when a case may not be resolved on nonconstitutional grounds).

¶ 48        The encryption statute provides, in relevant part:

"(b) A person shall not knowingly use or attempt to use encryption, directly or indirectly, to:

(1) commit, facilitate, further, or promote any criminal offense[.]" 720 ILCS 5/16D-5.5(b)(1) (West 2008).

The encryption statute defines "encryption" as follows:

" 'Encryption' means the use of any protective or disruptive measure, including, without limitation, cryptography, enciphering, encoding, or a computer contaminant, to: (1) prevent, impede, delay, or disrupt access to any data, information, image, program, signal, or sound; (2) cause or make any data, information, image, program, signal, or sound unintelligible or unusable; or (3) prevent, impede, delay, or disrupt the normal operation or use of any component, device, equipment, system, or network." 720 ILCS 5/16D-5.5(a) (West 2008).

¶ 49        The defendant argues that he was not proved guilty beyond a reasonable doubt of unlawful use of encryption. The State argues that, by changing the victim's password, the defendant knowingly used encryption to further the criminal offense as charged in count III. To determine whether there was sufficient evidence to support a conviction of unlawful use of encryption, we need to consider whether changing the victim's password could be considered "encryption" within the meaning of the statute. We review the interpretation of a statute *de novo*. *People v. Beachem*, 229 Ill. 2d 237, 243 (2008).

¶ 50        "Encryption" as used in the statute is defined very broadly to include any "protective or disruptive measure" that impedes access to data on a computer. Although the statute states that it is not limited to "cryptography, enciphering, encoding, or a computer contaminant," any other forms of encryption should take color from those terms. "Cryptography" means the enciphering and deciphering of messages in secret code or cipher; "enciphering" means to

-14-

convert a message into cipher; and "encoding" means to convert from one system of communication into another. See Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/ (last visited Jan. 17, 2013). " 'Computer contaminant' means any data *** that *** has the capability to: (1) contaminate, corrupt, consume, damage, destroy, disrupt, modify, record or transmit *** any other data *** contained in a computer *** without the knowledge or consent of the person who owns the data." 720 ILCS 5/16D-5.5(a) (West 2008). " 'Computer contaminant' includes, without limitation: (1) a virus, worm, or Trojan horse; *** or (3) any other similar data, [or] information *** that is designed *** to prevent, impede, delay, or disrupt the normal operation or use of any component, device, equipment, system, or network." *Id.*

¶ 51    These four terms inherently include some type of data transformation, manipulation, or destruction. Placing a password on a document does not involve any transformation, manipulation, or destruction of data. The legislative history shows that Representative Crespo stated that "[b]y encryption we mean altering a file using a secret code to prevent law enforcement from tracking down the person sending the file from the computer. The [statute] basically provides a tool for law enforcement to go after criminals who hide behind computers and encryption to commit their crimes." See 95th Ill. Gen. Assem., House Proceedings, May 25, 2007, at 50-51 (statements of Representative Crespo). In this case, changing the password did not alter a file or prevent law enforcement from tracking down the defendant. Accordingly, we hold that, under the circumstances in the present case, changing the password was not "encryption" within the meaning of the encryption statute. We therefore reverse the defendant's conviction of unlawful use of encryption.

¶ 52                              III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm the defendant's convictions on counts II and III, of harassment through electronic communications, but reverse his conviction on count IV, of unlawful use of encryption.

¶ 54    Affirmed in part and reversed in part.