2025 IL App (1st) 240491-U

No. 1-24-0491

Order filed November 6, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC 1191025 |
| | ) | |
| CARLOS OCAMPO, | ) | Honorable |
| | ) | Clarence L. Burch, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justice Quish concurred in the judgment.
Justice Ocasio dissented.

**ORDER**

¶ 1    *Held*: Defendant's conviction for harassment through electronic communications is affirmed where the evidence was sufficient to prove him guilty beyond a reasonable doubt, and where his unlawful arrest argument is forfeited.

¶ 2    Following a jury trial, defendant Carlos Ocampo was convicted of harassment through electronic communications and sentenced to two years of court supervision. On appeal, Ocampo, *pro se*, contends that: (1) the evidence was insufficient to prove him guilty beyond a reasonable

doubt; and (2) the police did not have probable cause to arrest him. For the following reasons, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4     Ocampo was charged with harassment through electronic communications based on a series of emails he sent to various people between January 1, 2022, and March 31, 2023. Before trial, Ocampo filed several *pro se* pleadings. One of those pleadings was entitled "Exhibits" and contained a statement of charges from the Illinois Department of Revenue (IDOR), which sought termination of Ocampo's employment for alleged actions that took place from March 2021 to February 2022. Those allegations were that Ocampo: (1) sent multiple emails to multiple recipients that "contained numerous and unsupported and unsubstantiated allegations against IDOR employees and included inappropriate pictures of his vomit in a toilet bowl"; (2) sent multiple emails that contained "racially sensitive remarks, inappropriate photos, and disparaging comments in an attempt to harm or destroy the reputation of fellow State employees"; and (3) harassed several members of IDOR after having been asked not to contact them. Ocampo was ultimately terminated.

¶ 5     Ocampo also filed, *pro se*, an "Answer" to the charges against him. In that answer, he stated that there was no probable cause to arrest him, and that his arrest was unlawful. Ocampo did not file a motion to quash arrest and suppress evidence.

¶ 6     At trial, Vincent Cacioppo testified that he was an IDOR employee for 36 years. He never had contact with Ocampo, except for "hundreds" of emails from Ocampo, starting in 2020. Cacioppo received emails from Ocampo unrelated to work, with false accusations and "nonsense." The emails made Cacioppo feel "horribly because [Ocampo] sent them to everybody in the State legislature, my colleagues." On February 13, 2023, Ocampo sent Cacioppo and others an email

with the subject line "insufferable racists." The body of the email insinuated that Cacioppo was in the mob. Cacioppo stated that he had no way to reach out to the other people to say he was not a racist or a bully, and that the emails damaged his reputation. Two days later, Ocampo sent an email to Cacioppo and others with the subject line, "gang of white-skinned primates," and the body of the email indicated that Cacioppo was not only "running a gang of white-skinned primates, but also a ring of corruption and thieves." It also stated that Cacioppo "micromanaged minorities to make them feel incompetent," knew very little about taxes, had emotional outbursts, and was committing "white collar crime."

¶ 7      On March 10, 2023, Cacioppo received an email from Ocampo that stated the IDOR discharged Ocampo because "he allegedly harassed Vincent Cacioppo by submitting complaints of systemic discrimination." The email stated that the Office of the Illinois Attorney General "has one week to file an appearance and defend the decision *** to keep a mobster, Vincent Cacioppo ***." This email was also sent to Cacioppo's colleagues.

¶ 8      Two more emails were sent on March 19, 2023. Cacioppo stated that he was embarrassed because the emails were also received by the Chief of Staff, Cacioppo's boss.

¶ 9      On March 21, 2023, Ocampo sent Cacioppo an email with the subject line "white collar criminal." The body of the email stated that Cacioppo "might deny that he is part of the KKK, but he can't deny that he is part of a gang that thinks they are better than the street gangs of Chicago, Illinois, because they are white collar criminals."

¶ 10     Cacioppo testified that the emails made him feel embarrassed because they were sent to his colleagues in State government who do not know his reputation.

¶ 11     Ocampo also attached images to many of his emails. One depicted Cacioppo as "some sort of gargoyle." Another depicted Cacioppo with "some gentleman that looks like he is in some kind

of Ku Klux Klan outfit." Other emails contained pictures of KKK members, and Cacioppo's and others' faces photoshopped onto birds sitting on top of a burning state capitol building. Cacioppo found these images to be obscene, embarrassing, intimidating, and harassing.

¶ 12    David Mack, a labor relations administrator for the IDOR since 2001, testified that he received emails from Ocampo beginning in 2020. From January 1, 2022, to March 31, 2023, Ocampo sent Mack several hundred emails, sometimes sending him multiple emails a day. He found these emails "harassing in nature, accusatory things that [he had] never done in [his] entire life."

¶ 13    Patrick Ross, Chief of Internal Affairs at IDOR, testified that Ocampo sent him several hundred emails over the course of several years. The emails were "relentless" and made it hard for Ross to work. The emails were "accusatory, harassing, demeaning-type emails and pictures." The emails were sent to State legislators, and people with whom Ross had a professional relationship.

¶ 14    Ross found the pictures attached to the emails to be embarrassing and humiliating. He testified that Ocampo was linking him to a terrorist group, the KKK, in the images attached to the emails, which was highly offensive.

¶ 15    The State then rested, and Ocampo testified on his own behalf. He stated that he worked for IDOR for eight years before being fired. In a complaint filed with the Office of the Executive Inspector General (OEIG), Ocampo accused Cacioppo of stealing money from IDOR collections by redirecting payments from the taxpayers to a "third party collection agency run by the mob." A year after Ocampo was fired, the state police asked him to stop sending emails and to take down a blog where he posted his emails and various images. He did not take down the blog or stop sending emails. Police then arrested him. Ocampo admitted to sending the emails but testified that "this

should be freedom of speech because, again, there is no pictures of nudity, there is no pictures of threat, I am not saying I am going to blow up a building."

¶ 16    When asked whether the complaint filed with the OEIG was found to have merit, Ocampo stated that it was confidential and it would not be published.

¶ 17    The State offered the following pertinent jury instructions, with no objection from Ocampo:

> "A person commits the offense of harassment through electronic communications when he uses an electronic communication for the purpose of making any comment, request, suggestion or proposal, which is obscene with an intent to offend.
>
> ***
>
> To sustain the charge of harassment through electronic communications, the State must prove the following propositions:
>
> [First proposition]: That the defendant used electronic communications;
>
> Second proposition: That the defendant made a comment, request, suggestion or proposal which is obscene;
>
> Third proposition: That the defendant intended to offend the person to whom the electronic communication was directed." See Illinois Pattern Jury Instructions, Criminal Nos. 19.09, 19.10 (approved Dec. 8, 2011).

¶ 18    Ocampo did not offer any jury instructions.

¶ 19    During closing arguments, the State argued that Ocampo's emails were obscene because of the content of the depictions, the testimony of how the recipients felt about the emails, and the volume of the emails sent.

¶ 20    The jury found Ocampo guilty of harassment through electronic communications. Ocampo filed a motion for a new trial, arguing that the State did not prove beyond a reasonable doubt that the emails were obscene. Ocampo contended that the content of the emails did not fit the definition of obscenity, as defined in the criminal offense of obscenity statute. 720 ILCS 5/11-20(b) (West 2022). The State responded that the statutory definition of obscenity was not applicable to the offense of harassment through electronic communications. Ocampo replied that the term "obscene" was not defined, so the statute was unconstitutionally vague. The trial court noted that Ocampo had not raised that issue at trial but nevertheless stated that it would consider the issue for the sake of thoroughness. The trial court found that the Webster's Dictionary definition of obscene was insightful and rejected Ocampo's vagueness challenge. The court sentenced Ocampo to two years of court supervision. Ocampo now appeals.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, Ocampo contends, *pro se*, that: (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of harassment through electronic communications; and (2) his arrest was unlawful.

¶ 23    As an initial matter, the State argues that Ocampo's opening brief fails to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), and therefore his claims on appeal should be forfeited. Specifically, the State contends that Ocampo's brief: fails to include the proper standard of review (Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020)); fails to cite to authority in the argument section (Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)); and fails to cite to portions of the record. *Id.*

¶ 24    The rules of procedure for appellate briefs are rules and not suggestions. *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 18. Where an appellant's brief contains numerous Rule

341 violations and impedes review, we may exercise our discretion, striking the brief and dismissing the appeal. See *Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38. *Pro se* status does not relieve a party of the obligation to comply with the appellate practice rules. *Fyzel v. Miller*, 2014 IL App (1st) 120597, ¶ 26. While Ocampo's brief certainly has deficiencies, in violation of Rule 341(h) (eff. Oct. 1, 2020), we find that the deficiencies are not so flagrant as to hinder our review. See *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 15 (we will strike appellant's brief only when Rule violations hinder effective review). Accordingly, we will address the merits of this case.

¶ 25                                    A. Sufficiency of the Evidence

¶ 26    Ocampo's first argument is that the State failed to prove him guilty of harassment through electronic communications beyond a reasonable doubt. The standard of review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). In making this determination a reviewing court "will not substitute its judgment for that of the trier of fact on issues of the weight of the evidence or the credibility of the witnesses." *People v. Phelps*, 211 Ill. 2d 1, 7 (2004). This court will not disturb a guilty verdict unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. *People v. Wright*, 2017 Il 119561, ¶ 70.

¶ 27    A person commits harassment through electronic communications when he uses electronic communications for the purpose of "[m]aking any comment, request, suggestion or proposal which is obscene with an intent to offend." 720 ILCS 5/26.5-3(a)(1) (West 2022). Therefore, to establish the offense of harassment through electronic communications, the State must prove: (1) that a defendant used electronic communications; (2) to make an obscene comment, request, suggestion

or proposal; and (3) that the defendant had an intent to offend. *Id.*; See also *People v. Kucharski*, 2013 IL App (2d) 120270, ¶ 24.[1] Ocampo only takes issue with the second element of the offense, arguing that the State failed to prove that his emails were obscene. The statute at issue does not define the word "obscene." Ocampo maintains that "obscene" should therefore be interpreted using the definition set forth in Illinois's obscenity statute (720 ILCS 5/11-20(b) (West 2022)), which incorporates a three-part test established in *Miller v. California*, 413 U.S. 15, 24 (1937). That definition is:

> "Any material or performance is obscene if: (1) the average person, applying contemporary adult community standards, would find that, taken as a whole, it appeals to the prurient interest; and (2) the average person, applying contemporary adult community standards, would find that it depicts or describes, in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and (3) taken as a whole, it lacks serious literary, artistic, political or scientific value." 720 ILCS 5/11-20(b) (West 2022).

¶ 28    This court has already rejected this same argument in *People v. Kucharski*, 2013 IL App (2d) 120270, and held that the definition of "obscene" from *Miller* does not apply to the offense of harassment through electronic communications. In *Kucharski*, the court specifically looked at how to define "obscene" in the context of electronic harassment and ultimately found that the Illinois obscenity statute's purpose is to control the commercial dissemination of obscenity, while

---

[1] The statute at issue in *Kucharski* was 720 ILCS 135/1-2, prohibiting the use of electronic communications to make any comment "which is obscene with an intent to offend." In 2013, the Harassing and Obscene Communications Act was repealed, and the offense of harassment through electronic communications was recodified under article 26.5 of the Criminal Code of 2012. See Pub. Act. 097-11-0 (eff. Jan. 1, 2013); 720 ILCS 5/26.5-3 (West 2022).

the electronic harassment statute's purpose is to prevent the personal invasion into people's homes and lives by harassing communications via electronic devices. *Kucharski*, 2013 IL App (2d) 120270, ¶¶ 31-32. The court found that the obscenity statute's definition had no application here, and that "obscene" as used in the electronic harassment statute "should be afforded its ordinary dictionary definition" of "disgusting to the senses" or "abhorrent to morality or virtue." *Id*. ¶ 35, citing Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/obscene (last visited October 20, 2025).

¶ 29 Thus, the definition of "obscene" in the obscenity statute (720 ILCS 5/11-20(b) (West 2022)) does not apply to the electronic harassment statute (720 ILCS 5/26.5-3(a)(1) (West 2022)), and that the dictionary definition of "obscene" applies instead. In construing a statute, courts give words their plain and ordinary meaning. *Kucharski*, 2013 IL App (2d) 120270, ¶ 41. The Merriam-Webster Online Dictionary contains such plain and ordinary definitions, and the use of dictionary definitions to illustrate the commonly understood meaning of a term is well-accepted. *Id*. Although the State cites *Kucharski* in its appellee brief, Ocampo fails to attempt to distinguish it or even address it in his reply brief. Moreover, Ocampo does not argue that under the ordinary dictionary definition of the word "obscene," that the emails he sent were not obscene, thus conceding this point. See *Kucharski*, 2013 IL App (2d) 120270, ¶ 35 (defendant does not argue that under the ordinary dictionary definition his actions were not obscene and therefore conceded this point).

¶ 30 Concession aside, the electronic communications Ocampo sent were disgusting to the senses and abhorrent to morality and therefore "obscene" within the meaning of the harassment statute. The recipients of the emails testified that Ocampo's emails accused them of being members of the KKK, of being members of the mob, and of being racists. The emails included graphic pictures of the recipients dressed as KKK members and the State Capitol on fire with the recipients

around it. The recipients also testified that Ocampo sent them hundreds of these emails, sometimes several times a day. Certainly, looking at this evidence in a light most favorable to the State (*Wheeler*, 226 Ill. 2d at 114), we find that a rational trier of fact could have found the email messages and accompanying pictures to be obscene, and we will not disturb such finding on appeal.

¶ 31                                B. Unlawful Arrest

¶ 32    Ocampo next contends that the arresting officer arrested him without an arrest warrant and "[t]here really wasn't probable cause because it's freedom of speech." He claims that he was "just accusing [the email recipients] of being corrupt and racist," and did not include threats or nudity in his emails.

¶ 33    Initially, we note that it is well-established that where the contention that a defendant was arrested without probable cause was not made in a motion to quash arrest and suppress evidence before trial, or in a post-trial motion, and the issue is raised for the first time on appeal, the claim of error is forfeited. See *People v. Accardo*, 139 Ill. App. 3d 813, 816 (1985); *People v. Jarrell*, 248 Ill. App. 3d 1043, 1049 (1993). Here, Ocampo never filed a motion to quash arrest and suppress evidence, and therefore this issue is forfeited. Additionally, if a defendant's arrest is found to be invalid, the remedy available is not dismissal of the charges or to otherwise release a defendant from custody. *People v. Williams*, 2019 IL App (3d) 160132, ¶ 13. The appropriate remedy would be to suppress the evidence obtained because of the arrest. *Id*. Here, Ocampo makes no argument about evidence obtained as the result of his allegedly unlawful arrest, and therefore any such contention is forfeited. *Accardo*, 139 Ill. App. 3d at 816.

¶ 34    To the extent Ocampo is making a constitutional argument that the harassment through electronic communications statute violates the first amendment to the United States Constitution

(U.S. Const., amend. I), we have previously rejected that argument and do so again here. " 'Speech may not be proscribed because of the ideas it expresses, but may be restricted because of the manner in which it is communicated or the action that it entails.' " *Kurcharski*, 2013 IL App (2d) 120270, ¶ 22 (quoting *Bergman v. District of Columbia*, 986 A. 2d 1208, 1220 (D.C. 2010)). Here, criminalizing obscene communication, with an intent to offend, is not content-based discrimination, but rather an attempt to regulate conduct that accompanies the proscribed speech. See *Kucharski*, 2013 IL App (2d) 120270, ¶ 22. An obscene electronic communication made with an intent to offend "is restricted by the statute not because its content communicates any particular idea; rather, it is restricted because of the purpose for which it is communicated." *Id*. Accordingly, Ocampo's first amendment argument necessarily fails.

¶ 35                                    III. CONCLUSION

¶ 36     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37     Affirmed.

¶ 38     JUSTICE OCASIO, dissenting:

¶ 39     Carlos Ocampo bombarded various government employees with hundreds of emails, including ones with images depicting the recipients as members of the Ku Klux Klan. For that, he was charged and convicted of the offense of using electronic communications for the purpose of "[m]aking any comment, request, suggestion or proposal which is obscene with an intent to offend." 720 ILCS 5/25.5-3(a)(1) (West 2022). There are a lot of words you might use to characterize the contents of Ocampo's communiqués—obnoxious, obsessive, and offensive come to mind, as do disturbing, distressing, and defamatory—but obscene is not one of them. The offense at issue is the online equivalent of making dirty phone calls (*cf. id.* § 26.5-2(a)(1)) which

obviously is not what he was doing. If Ocampo is guilty of a crime, it is not the one charged, and it is not our job to rescue the State from its poor charging decisions. I would reverse the conviction.