# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Board of Education of Waukegan Community Unit School District No. 60 v. Orbach*,
2013 IL App (2d) 120504**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF WAUKEGAN COMMUNITY SCHOOL DISTRICT No. 60, Plaintiff-Appellee, v. SHELLEY ORBACH, Defendant-Appellant (Illinois State Board of Education, Alan J. Cook, and The State of Illinois, Defendants). |
| District & No. | Second District <br> Docket No. 2-12-0504 |
| Filed | June 17, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the trial court's reversal of an administrative hearing officer's reinstatement of defendant teacher following his dismissal by plaintiff board of education based on the teacher's failure to remediate deficiencies in his performance, the hearing officer's decision was reinstated, since the School Code did not override the parties' collective bargaining agreement, and defendant's overall rating as a teacher was satisfactory, and pursuant to the parties' collective bargaining agreement, he was entitled to reevaluation rather than dismissal. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-MR-1796; the Hon. Christopher C. Starck, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellant.

Nancy G. Lischer and Alex Breland, both of Hinshaw & Culbertson LLP, of Chicago, and Thomas A. Morris, Jr., of Waukegan, for appellee.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Burke concurred in the judgment and opinion.
Justice McLaren dissented, with opinion.

## OPINION

¶ 1 Defendant, Shelley Orbach, appeals from the trial court's reversal of an administrative hearing officer's decision to reinstate him as a tenured high school science teacher after the Board of Education of Waukegan Community Unit School District Number 60 (Board) dismissed him. Orbach argues that (1) he was denied procedural due process under the School Code (Code) (105 ILCS 5/24A-1 *et seq.* (West 2010)); (2) the Board breached its collective bargaining agreement with the Lake County Federation of Teachers (Union); (3) the decision of the administrative hearing officer is not clearly erroneous; and, (4) in the alternative, this cause must be remanded as there are other issues that need to be addressed in light of the trial court's reversal. We find Orbach's second argument dispositive, and we reverse.

¶ 2                    I. BACKGROUND

¶ 3 Orbach was a tenured high school science teacher employed by Waukegan Community Unit School District Number 60 (District). On April 27, 2010, as required by the Code, he was formally evaluated by a qualified administrator, Molly Schaefer, his school's principal. The evaluation consisted of six component categories: "Organization," incorporating 3 separate elements; "Management," incorporating 7 elements; "Content," incorporating 5 elements; "Methodology," incorporating 15 elements; "Personal Interaction," incorporating 5 elements; and "Professional Responsibilities," incorporating 15 elements, with 1 element comprised of 5 subparts. Performance on each element had four possible ratings: "Excellent," valued at two points; "Satisfactory," valued at one point; "Unsatisfactory," valued at zero points; and " Not Observed." Performance on each category was then rated as "Excellent," "Satisfactory," or "Unsatisfactory," based on the mathematical average of the scores for the element within the category. There was also an "OVER-ALL RATING FOR THIS OBSERVATION," with "Excellent," "Satisfactory," and "Unsatisfactory" as the possible ratings. The overall rating was based on the mathematical average of the six component category scores.

¶ 4      On the evaluation, Orbach was rated "Unsatisfactory" on 23 separate elements and he received no "Excellent" ratings. As a result of the averaging methodology, he was rated "Unsatisfactory" in two component categories and "Satisfactory" in the other four categories. Nevertheless, his overall rating for the observation was "Satisfactory." On May 28, 2010, the District developed a remediation plan that included both an explanation of each deficiency and an outline of recommendations to improve performance in the two deficient categories, "Management" and "Methodology." The plan was in effect during the first semester of the 2010-11 school year. The plan included the following "INDICATORS OF SUCCESS": "The indicators for success are satisfactory ratings on the summative evaluation in each of the deficient areas." The "TIMELINE FOR COMPLETION" was the first semester of the 2010-11 school year.

¶ 5      Orbach was reevaluated on September 27, 2010, by Ms. Schaefer; on November 2, by Karen Frank, the math/science division head; and on December 15, by Ms. Schaefer again. On the September 27 evaluation, he was rated "Unsatisfactory" on 10 elements; however, he received a "Satisfactory" rating in five of the six categories (all except "Methodology") and for the overall rating. On the November 2 evaluation, he was rated "Unsatisfactory" on 13 elements; "Unsatisfactory" in one category ("Methodology"); and "Satisfactory" for the overall rating. On the December 15 evaluation, he was rated "Unsatisfactory" on 13 elements; "Unsatisfactory" on "Methodology"; and "Satisfactory" for the overall rating.

¶ 6      Despite being rated as performing satisfactorily overall, Orbach was dismissed by the Board on January 11, 2011. The Board's resolution stated that "pursuant to Article 24A of the School Code and the Evaluation Plan, any teacher receiving an 'unsatisfactory' rating at the end of the Remediation Plan shall be dismissed in accordance with the law." It then found that "the failure of [Orbach] to accomplish the specific remediation objective and to perform the required activities regarding the objectives as embodied in the Remediation Plan, and therefore failing to satisfactorily complete the Remediation Plan, constitute grounds for his dismissal."

¶ 7      The Union requested a hearing before the Illinois State Board of Education, which was held on June 14 and 15, 2011. On September 22, 2011, the administrative hearing officer reinstated Orbach "to a substantially similar teaching position before the start of the next school semester." The hearing officer's written decision noted that the District contended that "Methodology" was "the most important category of an evaluation since it considers how content is delivered to students." The written decision also noted that Orbach contended that the collective bargaining agreement (CBA or contract) between the Board and the Union "provides that successful completion of a remediation plan depend[s] on the teacher's overall rating at the end of the plan."

¶ 8      The hearing officer reasoned that three main provisions were in play. Section 24A-5 of the Code described the content of evaluation plans. See 105 ILCS 5/24A-5 (West 2010). Article IV, section 12, of the CBA discussed remediation matters that had been agreed to by the District and the Union. Section 24-12 of the Code related to the dismissal process for tenured teachers. See 105 ILCS 5/24-12 (West 2010). The hearing officer found that the CBA provided for remediation of a teacher if any of the categories were rated as unsatisfactory, but it called for dismissal only if the overall rating was unsatisfactory. Since

Orbach received a "Satisfactory" overall rating, he should not have been dismissed. Instead, he should have been subject to reevaluation the following year. Hence, Orbach's dismissal was reversed.

¶ 9      The Board appealed to the trial court for judicial review of the administrative proceedings, pursuant to the Code (105 ILCS 5/24-16 (West 2010)) and the Illinois Administrative Review Law (735 ILCS 5/3-104 (West 2010)). After hearing argument, the court ruled as follows:

> "It seems to me that the reversal of the decision [of the Board] was incorrect, that both the Code and the CBA require the teacher to improve on the items which were deficient beforehand. If the teacher did not improve on those items, the teacher needs to be removed. And there really is no factual question. The way I am interpreting the Code and the CBA, the teacher should, in fact, have been removed. So I am going to reverse the decision."

¶ 10     Orbach timely appealed.


¶ 11                              II. ANALYSIS

¶ 12     As an initial matter, the parties disagree as to the applicable standard of review. Orbach contends that the "clearly erroneous" standard applies because this appeal involves a mixed question of law and fact, *i.e.*, one where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law, as applied to the established facts, is violated. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). The Board counters that Orbach's reliance on *AFM Messenger Service* is misplaced because the facts in this case are uncontroverted, so the dispute involves a question of law. The Illinois Supreme Court has held as follows:

> "[W]here the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is 'clearly erroneous.' [Citation.] We have also held, however, that where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*." *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011).

We also point out that in a case like this we review the decision of the hearing officer rather than that of the trial court. *Board of Education, School District No. 151 v. Illinois State Board of Education*, 154 Ill. App. 3d 375, 381-82 (1987). However, as the facts in this case are uncontroverted and the ultimate resolution of this case turns on the meaning of a statute and a contract, our review is *de novo*. *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 32.

¶ 13     At issue in this case is the interplay between the CBA and section 24A-5(m) of the Code (105 ILCS 5/24A-5(m) (West 2010)). Thus, ordinary principles of statutory and contractual construction control. In either case, our goal is to ascertain the intent underlying the statute

-4-

or the contract, which is typically manifested most clearly by its plain language. See *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 636-37 (2008) (contract); *Buchna v. Illinois State Board of Education*, 342 Ill. App. 3d 934, 936 (2003) (statute). Where the language of a statute or a contract is clear and unambiguous, we may not resort to other aids of construction. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006) (contract); *Buchna*, 342 Ill. App. 3d at 936 (statute).

¶ 14  Orbach's position can be summarized as follows: an unsatisfactory rating in even one category will initiate a remediation plan, but only an *overall* unsatisfactory rating can lead to a dismissal. His position finds ample support in the plain language of the CBA. Article IV(A)(7) of the CBA, entitled "Written Evaluation," provides for an evaluation form, and article IV(A)(12)(a), entitled "Remediation Status," provides that "[a]ny tenured teacher who receives an overall unsatisfactory rating in *any of the categories outlined in the approved Teacher evaluation instrument*, and the reason(s) for such rating are deemed remediable, shall be placed on remediation status." (Emphasis added.) Article IV(A)(12)(c) of the CBA, entitled "Results of Remediation," states, in pertinent part: "If the Teacher on remediation status subsequently is evaluated with an *overall rating of satisfactory or better*, the Teacher shall be re-evaluated the following year." (Emphasis added.) Conversely, "If the teacher on remediation status is still evaluated with an *overall rating of unsatisfactory* at the end of the remediation plan, the Board shall automatically institute dismissal procedures against the Teacher." (Emphasis added.) Clearly, the CBA, in the present context, concerns itself with a teacher's "overall rating." Thus, if it controls, Orbach must prevail in this matter, as it is undisputed that his overall rating was satisfactory. However, the Board asserts that the CBA does not control.

¶ 15  In so arguing, the Board relies on section 24A-5(m) of the Code, which provides:

"The plan shall include a description of each teacher's duties and responsibilities and of the standards to which that teacher is expected to conform, and shall include at least the following components:

* * *

(m) dismissal in accordance with Section 24-12 or 34-85 of the School Code of any teacher who fails to complete any applicable remediation *plan* with a rating equal to or better than a 'satisfactory' or 'proficient' rating." (Emphasis added.) 105 ILCS 5/24A-5(m) (West 2010).

The Board contends that this portion of the Code mandates dismissal of a teacher who fails to remediate the particular deficiencies identified in the remediation plan. The Board asserts that the Code prevails over the CBA. The Board's latter contention is, of course, accurate.

¶ 16  Parties to collective bargaining shall not implement a provision that is inconsistent or conflicts with any statute. See *Buchna*, 342 Ill. App. 3d at 939. Section 10(b) of the Illinois Educational Labor Relations Act provides in part:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois. The parties to the collective bargaining process may effect

-5-

or implement a provision in a collective bargaining agreement if the implementation of that provision has the effect of supplementing any provision in any statute or statutes enacted by the General Assembly of Illinois pertaining to wages, hours or other conditions of employment ***." 115 ILCS 5/10(b) (West 2010).

Thus, the Code prevails over the CBA, as was argued by the Board, at least to the extent that they are inconsistent. See *Buchna*, 342 Ill. App. 3d at 939. The question then becomes whether the legislature intended the result espoused by the Board, *i.e.*, that a teacher must successfully remediate each and every part of a remediation plan to be deemed to have satisfactorily completed the plan.

¶ 17    We see nothing in the plain language of section 24A-5(m) that would support such an interpretation. The relevant language is as follows: "The plan shall include *** dismissal *** of any teacher who fails to complete any applicable remediation plan with a rating equal to or better than a 'satisfactory' or 'proficient' rating." 105 ILCS 5/24A-5(m) (West 2010). The legislature could have very easily stated that the dismissal requirement applies to any teacher who fails to complete any applicable *portion of* or *component part of* any applicable remediation plan. However, it did not do so and instead chose to speak globally, in terms of the plan. It is well settled that we may not read into a statute any exceptions, conditions, or limitations that the legislature did not express. *Stinson v. Chicago Board of Elections Commissioners*, 407 Ill. App. 3d 874, 876 (2011). Accordingly, as this statute does not state that it applies to each component part of a remediation plan independently, we cannot read it as doing so. Thus, the plain language of section 12(c) of the CBA is not inconsistent with section 24A-5(m) of the Code by calling for the dismissal of a teacher who "is still evaluated with an overall rating of unsatisfactory at the end of the remediation plan."

¶ 18    The Board claims that such a construction of the CBA brings section 12(c) ("Results of Remediation") into conflict with other sections of the CBA. It argues that section 12(b) of the CBA (article IV(A)(12)(b)) mandates that the remediation plan define the terms of success. We note that section 12(b) states what constitutes success, while section 12(c) defines what occurs following various degrees of success or failure. However, the Board also contends that this interpretation of the CBA brings section 12(c) into conflict with the purpose of these provisions, as stated in section 12(a), which is to remedy deficiencies. We find unpersuasive the Board's attempt to override the otherwise plain language of section 12(c) with a general statement about purpose. *Cf. Cole v. Shanior*, 69 Ill. App. 3d 505, 507 (1979) ("[W]e cannot agree that this purpose permits us to disregard and violate the plain language of the garnishment statute.").

¶ 19    Like the Board, the dissent relies on the language of section 12(a) to clarify the criteria for dismissing a teacher, noting that it "prescribes remediation for any teacher with an *overall* unsatisfactory rating in *any of the categories outlined* in the approved teacher evaluation instrument." (Emphases in original.) *Infra* ¶ 28. While it is true that a contract must be read as a whole (*J.M. Process Systems, Inc. v. W.L. Thompson Electric Co.*, 218 Ill. App. 3d 350, 354 (1991)), here the provisions at issue do not relate to the same subject matter. Section 12(a) addresses how a teacher is identified for remediation; section 12(c) concerns the consequences of being placed on remediation status. Viewed in this light, it makes sense that the threshold for being identified for remediation would be lower than the threshold for the

-6-

severe consequence of dismissal. Obviously, any deficiency should be identified and remediated. It is quite another thing to say that an otherwise sound teacher should be dismissed where that teacher is unable to successfully remediate even a single deficiency. Indeed, the dissent's position, taken to its logical bounds, would mandate the dismissal of all but perfect teachers, which would run afoul of the principle that a contract should be construed to avoid absurd results. *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 92 (2009).

¶ 20　　　The dissent counters that our position–that is, the position set forth in the plain language of the CBA–is absurd because a teacher who fails "every aspect of the remediation plan" is not automatically dismissed. *Infra* ¶ 28. To put this charge in context, one must recall that a teacher is evaluated on 6 component categories that contain a total of 54 different elements. A teacher rated unsatisfactory on as few as two or three elements (if the relevant category were organization, content, or personal interaction) could be placed on remediation status. The remediation plan would accordingly have only 2 or 3 elements as well, so "failing every aspect of the remediation plan" could very well mean failing to remediate 2 or 3 of 54 elements. There is simply nothing absurd about not mandating that a teacher performing approximately 50 tasks at a satisfactory or excellent level be dismissed solely because the teacher is unable to remediate a few other tasks. (We recognize that a teacher might be rated unsatisfactory regarding a greater number of tasks; we emphasize here that any teacher avoiding the automatic-dismissal provisions of the CBA would necessarily be performing at an overall satisfactory level.) While the parties to the CBA could have required the dismissal of a teacher notwithstanding an overall satisfactory rating, the plain language of the CBA establishes that they did not. As explained above, the parties chose to make dismissal contingent upon a teacher's overall rating. Since not forcing the dismissal of a teacher who is performing satisfactorily or, indeed, excellently, overall is clearly not absurd, the hypothetical scenario posited by the dissent provides no basis to invoke the absurd-results rule and override the parties' express agreement. Therefore, as Orbach was performing satisfactorily overall (we note that the evaluation instrument provides for the calculation of an overall rating; if, as the dissent advocates, dismissal were contingent upon the rating in individual categories, calculating an overall rating would be unnecessary), the CBA did not mandate his dismissal.

¶ 21　　　Accordingly, we find that no conflict exists between the CBA and section 24A-5(m). Thus, contrary to the Board's position, the statute does not override the CBA. Therefore, as Orbach's overall rating was satisfactory, in accordance with the terms of the CBA and as the hearing officer found, he is subject to reevaluation rather than dismissal.

¶ 22　　　　　　　　　　　　　　III. CONCLUSION

¶ 23　　　For these reasons, the judgment of the circuit court of Lake County is reversed, and the decision of the hearing officer of the State Board of Education is reinstated.

¶ 24　　　Reversed.

¶ 25   JUSTICE McLAREN, dissenting.

¶ 26   I believe that the circuit court was correct when it reversed the decision of the hearing officer; therefore, I would affirm. I agree with the majority's statement that the Code prevails over the CBA. *Supra* ¶ 16. The Code provides that "any teacher who fails to complete any applicable remediation plan with a rating equal to or better than a 'satisfactory' or 'proficient' rating" is subject to dismissal. 105 ILCS 5/24A-5(m) (West 2010). In turn, article IV(A) of the CBA, entitled "Evaluation, Consulting Teacher and Remediation," includes section 7, entitled "Written Evaluation," which provides that a written evaluation be furnished to the teacher after each formal observation. Section 7 also provides that, within 10 days of the observation, an evaluation conference must be held. This conference "shall include a discussion of the written evaluation including strengths and weaknesses, and the evaluator shall identify deficiencies in the Teacher's performance of his/her duties and recommend and provide remedial help when appropriate." Article IV(A)(12), entitled "Remediation," provides in pertinent part:

"**a. Remediation Status**

Any tenured teacher who receives an *overall unsatisfactory rating in any of the categories outlined in the approved Teacher evaluation instrument*, and the reason(s) for such rating are deemed remediable, shall be placed on remediation status.

\*\*\*

**b. Remediation Plan**

Within thirty (30) days of the receipt of the signed summative evaluation placing the Teacher on remediation status, a remediation plan shall be developed for implementation to correct the remediable deficiencies cited. \*\*\* The written remediation plan shall contain the following components:

(1). Description of the deficiencies in need of remediation.

(2). Clear definition of an acceptable level of performance.

(3). List of identified expectations to be achieved.

(4). Indication of assistance to be provided.

(5). System for monitoring progress.

(6). Indicators of success.

(7). Resources needed.

(8). Timeline for completion.

\*\*\*

**c. Results of Remediation**

Any tenured Teacher on remediation status shall be formally evaluated and rated once every thirty (30) school days for the ninety (90) school day remediation period immediately following receipt of the remediation plan.

\*\*\*

If the Teacher on remediation status subsequently is evaluated with an overall rating of satisfactory or better, the Teacher shall be re-evaluated the following year. If

-8-

summative evaluations during the three (3) years following remediation have an overall rating of satisfactory or better, the remediation plan and previous unsatisfactory evaluation shall be removed from the Teacher's official personnel file.

If the Teacher on remediation status is *still evaluated with an overall rating of unsatisfactory* at the end of the remediation plan, the Board shall automatically institute dismissal procedures against the Teacher in accordance with the *School Code*." (Emphases added.)

¶ 27 The majority quotes the relevant language of the statute regarding "dismissal *** of any teacher who fails to complete any applicable remediation plan with a rating equal to or better than a 'satisfactory' or 'proficient' rating," and then concludes that this language does not support the Board's argument that a teacher must successfully remediate each and every part of a remediation plan to be deemed to have satisfactorily completed the plan. *Supra* ¶ 17. I believe that the Board was correct in its determination that section 24A-5(m) of the Code mandates dismissal of a teacher who fails to remediate the particular deficiencies identified in the remediation plan. If section 12(c) of the CBA conflicts with the Code by using the term "overall rating," the Code must prevail, as stated by the majority. *Supra* ¶ 15.

¶ 28 The language in section 12(a) prescribes remediation for any teacher with an *overall* unsatisfactory rating in *any of the categories outlined* in the approved teacher evaluation instrument. In other words, whenever a summative evaluation is taken, if *any* category is unsatisfactory, then a remediation plan is set up to address only those categories that are unsatisfactory. It follows, then, that if a teacher's performance in a particular category remains "unsatisfactory," that teacher is subject to dismissal. For example, if the teacher receives an "unsatisfactory" rating in four different categories, then the remediation plan would relate to remediating those four categories. At the end of the remediation period, if any one category is unsatisfactory, then I believe that the CBA provides that the teacher shall be dismissed. Contrary to the majority's claim in paragraph 19, my interpretation of the statute and the contract does not require perfection. The statute requires satisfactory teaching methods from Illinois teachers. I submit that the majority's interpretation makes a mockery of the remediation process, because a teacher will have to be retained regardless of failing every aspect of the remediation plan. Indeed, the majority's position, taken to its logical conclusion, would mandate the retention of all teachers who have completely failed their remediation plans, so long as their overall ratings were satisfactory, which would run afoul of the principle that a statute should be construed to avoid absurd results. See *Village of Ringwood v. Foster*, 405 Ill. App. 3d 61, 82 (2010). Although a court generally may not read unstated limitations into statutes, it also must interpret statutes so as to avoid absurd results. *Id.*[1]

---

[1]"However, where a plain or literal reading of a statute produces absurd results, the literal reading should yield: 'It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. *** If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.' " *People v. Hanna*, 207 Ill. 2d 486, 498 (2003) (quoting *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459-60 (1892)).

¶ 29    I submit that the purpose of the overall rating is to serve as a baseline that indicates whether or not the teacher needs remediation in a particular category since either the previous evaluation or the previous reevaluation, whichever applies. If remediation is required in a category already identified for remediation, the teacher is dismissed. If a category not previously identified for remediation receives an unsatisfactory rating, then a new plan is created including all the "new" unsatisfactory categories. Finally, if the overall rating is satisfactory with all categories *also* being satisfactory in three consecutive evaluations, then the last remediation plan is removed from the teacher's record.

¶ 30    Here, in a letter to the Board dated January 5, 2011, the District recommended dismissal, effective January 26, 2011. The Board's resolution, adopted January 11, found that Orbach "failed to meet the specific remediation objectives embodied in the Remediation Plan." In a letter dated January 12, the Board informed Orbach of its decision as follows: "In the opinion of the Board, your failure to comply with the Remediation Plan *** constitutes sufficient cause for your dismissal on the basis of incompetency and lack of qualification to teach."

¶ 31    There is nothing in the record indicating that the District did not follow the procedures outlined in the Code and the CBA. The evaluations were timely and properly accomplished by qualified evaluators. Orbach was properly advised of the results and participated in the remediation plan. This was in accordance with section 24A-5 of the Code, which provides: "Each school district to which this Article applies shall establish a teacher evaluation plan which ensures that each teacher in contractual continued service is evaluated at least once in the course of every 2 school years." 105 ILCS 5/24A-5 (West 2010). The CBA provided that "[e]valuations of certified teaching staff shall be done by administrators who have been qualified by the State Board of Education." Additionally, "[t]eachers shall be rated as to the standards outlined in the approved teacher evaluation instruments." Further, the CBA required the remediation plan to define the "indicators of success" of remediation. The record demonstrates that all of these steps were followed.

¶ 32    I believe that Orbach did not complete the remediation plan with a "satisfactory rating." To be sure, under the mathematical scheme created by the CBA and applied by the hearing officer, Orbach had an overall "Satisfactory" rating. However, Orbach was rated "Satisfactory" in only five categories and rated "Unsatisfactory" in "Methodology." The "Methodology" category consisted of 15 "elements," on which he was rated "unsatisfactory" on 9 "elements" in the first and second evaluations and unsatisfactory" on 10 "elements" in the third evaluation. I submit that these evaluations are not of an "all but perfect" teacher, as the majority indicates. *Supra* ¶ 19. In the deficient category, "Methodology," he remained deficient, and, therefore, he did not successfully complete the remediation plan.

¶ 33    I disagree with the majority's statements that the legislature chose to speak globally in terms of the plan, and that my interpretation involves reading into the statute exceptions, conditions, or limitations that the legislature did not express. See *supra* ¶ 17. Because the Code controls, we should follow its language and rule that Orbach was properly dismissed for failing to complete the applicable remediation plan.