# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Burk*, 2013 IL App (2d) 120063

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE E. BURK, Defendant-Appellant.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE E. BURK, Defendant-Appellant. |
| District & No. | Second District<br>Docket Nos. 2-12-0063, 2-12-0064 cons. |
| Filed | August 30, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motions to suppress in two consolidated cases was affirmed, since defendant voluntarily consented to a search of his person following a consensual encounter with an officer at 1:30 a.m. while he was walking on a street near an apartment complex, and in an unrelated case, a statement he made while seated in a squad car was recorded by a device capable of recording audio and video mounted in the rear passenger area and later used to find heroin in the vehicle defendant occupied when the car was stopped, and that statement was exempt from the Illinois Eavesdropping Act, since defendant was "in the presence" of the officer who was in and out of the car several times and never more than a few feet away when defendant made his statement. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 10-CF-2683, 11-CF-967; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and R. Christopher White, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Schostok and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Dale E. Burk,[1] brings these consolidated appeals from the denials of his motions to suppress evidence in two separate cases in the circuit court of Du Page County. We separately set forth the pertinent facts in each case as well as the analysis and disposition of the respective issues. Because the trial court did not err in denying the motion to suppress in either case, we affirm.

¶ 2                                   I. BACKGROUND
¶ 3                               A. No. 2-12-0063
¶ 4    The following facts in this case are taken from the hearing on defendant's motion to suppress evidence. The only witness to testify at the hearing was Officer Daniel McIntyre of the Woodridge police department.

¶ 5    On November 12, 2010, at about 1:30 a.m., Officer McIntyre was patrolling in his unmarked squad car on a street adjacent to an apartment complex. As he drove down the street, he observed two individuals walking along the street's edge. As they walked, they went behind some "bushes and trees" located between the street and the apartment buildings. There was nothing about the street that forced them to walk behind the bushes and trees. The area in the vicinity of the bushes and trees was "real dark" because the nearby streetlights did not illuminate it. After 5 or 10 seconds, the two walked from behind the shrubbery, across the lane of traffic in which Officer McIntyre was driving, and onto the grassy median between the traffic lanes.

---

[1]Although defendant's last name is spelled "Burke" in some of the documents in the trial court and this court, in his motion to consolidate his appeals he specifically stated that his last name is spelled "Burk" and that he wishes to have the consolidated appeals proceed under that latter spelling.

¶ 6        As they walked on the median, Officer McIntyre pulled up to them in his squad car and stopped in his lane of traffic. In doing so, he did not block their path of travel or activate the emergency lights on the squad car. He asked, "[H]ow you folks doing tonight?" He did not give them any commands such as ordering them to stop, nor did he raise his voice. Defendant responded, "[O]h I didn't even know you were in a squad car; I didn't even know who you were."

¶ 7        Officer McIntyre then exited his squad car and asked defendant and his female companion what they were up to and why they had been by the bushes and trees. He did so, in part, because it was near the holiday season and there had been an increase in vehicular and residential burglaries during that time of year, including in dark areas. Also, he, along with other patrol officers, had been asked to "beef up [their] patrols in the apartment complex." Thus, although there were no vehicles parked near the bushes and trees, Officer McIntyre approached defendant and his companion to "find out why they were in the apartment complex at 1:20 in the morning" and why they were "coming out from behind a bush and tree area which was adjacent to an apartment building where nobody ever walks."

¶8        Officer McIntyre also asked the two for identification, which each produced. After asking defendant for identification, Officer McIntyre observed that defendant was "sweating profusely," his hands were shaking, and he was "fidget[ing] a lot."

¶ 9        Officer McIntyre then asked defendant if he had anything illegal on him, to which defendant answered "no" but told Officer McIntyre that he could search him. For safety reasons, Officer McIntyre opted to pat down defendant first as opposed to reaching into his clothing. In conducting the frisk, Officer McIntyre felt a bulge in defendant's right front pocket. When he asked defendant what was in the pocket, defendant responded that it was a pipe and "synthetic cannabis or fake weed."

¶ 10       Defendant gave Officer McIntyre permission to remove the items from his pocket. As Officer McIntyre reached into defendant's pocket, defendant fainted and fell into the squad car. Officer McIntyre caught him, laid him on the ground, and asked him if he was okay. Defendant, who had come to, stated that he gets "real nervous" when the police stop him. After defendant stood up, Officer McIntyre continued the search of defendant's person, but found nothing else.

¶ 11       Because defendant had fainted, Officer McIntyre called for an ambulance. After it arrived, and while defendant was being treated, Officer McIntyre observed on the ground, where defendant had been lying, a cigarette pack, a foil pipe, and a plastic container holding a material that appeared to be real cannabis. Officer McIntyre looked into the cigarette pack and discovered a yellow plastic bag. The bag contained a "powdery substance" that he suspected was cocaine. Defendant was arrested for possession of a controlled substance.

¶ 12       At the hearing on the motion to suppress evidence, the trial court ruled that the initial encounter, before defendant consented to the search of his person, was not a seizure. Because it found that there was no seizure and that the consent to search was otherwise voluntary, the trial court granted the State's motion for a directed finding and denied the motion to suppress evidence.

¶ 13                                B. No. 2-12-0064

¶ 14        The following facts in this case are taken from the hearing on defendant's motion to suppress evidence. The sole witness at the suppression hearing was Trooper Jason Bradley of the Illinois State Police. On April 21, 2011, Trooper Bradley was assigned to a special enforcement detail on Interstate 80. He was advised via radio that a silver Oldsmobile Alero that had been involved in a recent drug deal in Chicago was headed in his direction. After observing the Alero, he determined that it was traveling 64 miles per hour in a 55-mile-per-hour zone.

¶ 15        Trooper Bradley, who was in uniform but in an unmarked squad car, activated his emergency lights and stopped the Alero. After the Alero pulled over and stopped, Trooper Bradley exited his squad car and approached the Alero. As he did so, he smelled burned cannabis coming from inside the Alero. He also observed three occupants in the vehicle, including defendant, who was in the front passenger seat.

¶ 16        Based on the smell of burned cannabis, Trooper Bradley requested a nearby K-9 unit to examine the Alero. After the dog alerted to the Alero, Trooper Bradley placed all three occupants in his squad car, with defendant and the other passenger in the backseat. Because the driver indicated to Trooper Bradley that he wanted to speak to him outside the vehicle, Trooper Bradley and the driver exited the squad car, leaving defendant and the other passenger alone in the backseat. While the Alero was still being searched, the driver told Trooper Bradley that there were two packets of heroin in the driver's-side door and that they were his. Trooper Bradley arrested him for possession of a controlled substance. The search of the Alero was completed, and no other illegal substances were found.

¶ 17        According to Trooper Bradley, the squad car was equipped with two cameras capable of recording audio and video. One was positioned to record events and sounds occurring outside of the squad car. The other was located on the inside of the rear passenger area, on that part of the driver's-side door where the clothes hanger would normally be. It was a "large object," about the "size of a cell phone and about the thickness of three cell phones." It also had a "black microphone bud" and a lens with "three LED looking lights" that were visible. Anyone sitting in the backseat of the squad car could see the camera "very clearly." The camera looked the same whether it was operating or not. Trooper Bradley did not expressly advise defendant or the other passenger that they were being recorded via the camera. Both cameras were operational and recording both audio and video during the entire incident.

¶ 18        Trooper Bradley was in and out of the squad car several times while defendant was in the backseat, but he was never more than "10 or 15 feet" from the squad car.

¶ 19        The next day, when Trooper Bradley reviewed the video and audio recording from the inside camera, he heard defendant tell the other passenger that he had successfully hidden some drugs under the driver's seat of the Alero, next to the center armrest. Based on this information, Trooper Bradley searched the Alero, which was at a tow lot, a second time. During that search, he found more heroin hidden in the location described by defendant in his recorded statement. Trooper Bradley admitted that, were it not for defendant's statement, he "would not have known there [were] other drugs in the vehicle at that time."

¶ 20        The trial court granted the State's motion for a directed finding and denied defendant's

-4-

motion to suppress evidence. In doing so, the trial court found that there was a "surreptitious recording of defendant." However, it found that defendant was in the squad car at the time his statement was recorded and that the statement was recorded in the presence of Trooper Bradley, a uniformed peace officer. Thus, the trial court ruled that the exemption under section 14-3(h-5) of the Criminal Code of 1961, commonly known as the Illinois Eavesdropping Act (Act) (720 ILCS 5/14-3(h-5) (West 2010)) applied and that the evidence could not be suppressed under the Act.

¶ 21                                II. ANALYSIS

¶ 22                                A. No. 2-12-0063

¶ 23      In this appeal, defendant contends that the trial court erred in finding that no seizure occurred before he consented to the search of his person. He further posits that, because there was no reasonable suspicion to justify an investigative stop, the seizure violated the fourth amendment. Because we conclude that the police encounter prior to defendant's consent was not a seizure, we affirm the denial of the motion to suppress evidence.

¶ 24      In reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). A trial court's findings of historical fact are reviewed for clear error, and a reviewing court must give due weight to any inferences drawn from those facts by the fact finder. *Luedemann*, 222 Ill. 2d at 542. "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *Luedemann*, 222 Ill. 2d at 542. Accordingly, we review *de novo* the trial court's ultimate legal ruling as to whether the evidence should have been suppressed. *Luedemann*, 222 Ill. 2d at 542.

¶ 25      In *Luedemann*, our supreme court described three levels of police-citizen encounters. *Luedemann*, 222 Ill. 2d at 544. In doing so, it explained that not every encounter between the police and a citizen results in a seizure. *Luedemann*, 222 Ill. 2d at 544. Thus, the courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions (*Terry* stops), which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate the fourth amendment (consensual encounters). *Luedemann*, 222 Ill. 2d at 544.

¶ 26      As to a consensual encounter, the law is clear that a police officer does not violate the fourth amendment by merely approaching a person in a public place and asking him questions if he is willing to listen. *Luedemann*, 222 Ill. 2d at 549. The police have the right to approach citizens and ask potentially incriminating questions. *Luedemann*, 222 Ill. 2d at 549.

¶ 27      For fourth amendment purposes, a person is seized when an officer, by the use of physical force or show of authority, restricts that person's liberty. *Luedemann*, 222 Ill. 2d at 550. In this context, a seizure occurs only when a reasonable person would not feel free to leave. *Luedemann*, 222 Ill. 2d at 550. The analysis requires an objective assessment of the police conduct and does not depend upon the subjective perception of the defendant.

-5-

*Luedemann*, 222 Ill. 2d at 551. A seizure does not occur simply because a police officer approaches a person and questions him if he is willing to listen, or because the officer asks for identification, so long as the officer does not convey a message that compliance is required. *Luedemann*, 222 Ill. 2d at 551.

¶ 28 Four factors can indicate that a police-citizen encounter is a seizure. *Luedemann*, 222 Ill. 2d at 553 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Those factors are: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Luedemann*, 222 Ill. 2d at 553.

¶ 29 In this case, the undisputed facts do not suggest remotely that a seizure occurred before defendant consented to the search of his person. Officer McIntyre pulled up to defendant in an unmarked squad car, without activating the emergency lights. In doing so, he did not position the squad car in a way that inhibited defendant's ability to continue walking. Nor did Officer McIntyre order him to stop. Rather, he merely asked defendant and his companion how they were doing. After exiting the squad car, he "asked" them what they were up to and why they had been by the bushes and trees. Absent some indicia of coercion or show of authority, these questions did not convert an otherwise consensual police-citizen encounter into a seizure. Likewise, asking defendant for identification did not, without more, make the encounter a seizure. See *Luedemann*, 222 Ill. 2d at 551.

¶ 30 There was no evidence of any of *Mendenhall*'s factors indicating a seizure. There was only one officer, and there was no touching of defendant and no display of a weapon. Although Officer McIntyre asked defendant potentially incriminating questions and for identification, he denied using any commanding language or raising his voice in doing so.

¶ 31 When viewed in their totality, these facts demonstrate nothing more than a consensual police-citizen encounter in which a reasonable person in defendant's shoes would have believed that he was free to discontinue the encounter and proceed on his way. Accordingly, there was no seizure before defendant consented to the search of his person. Because there was no seizure, we need not consider whether there was reasonable suspicion justifying an investigative detention. Therefore, we affirm the trial court's denial of the motion to suppress evidence in this case.

¶ 32                                        B. No. 2-12-0064

¶ 33 In this appeal, defendant argues that the heroin found during the second search of the Alero should have been suppressed under section 14-5 of the Act (720 ILCS 5/14-5 (West 2010)), because the exemption under section 14-3(h-5) of the Act did not apply. In that regard, he contends that his statement, which led to the second search, was not recorded in the presence of a uniformed peace officer, as required by section 14-3(h-5), because Trooper Bradley was not inside the squad car when his statement was recorded.

¶ 34 Section 14-5 provides that any evidence obtained in violation of the Act is not admissible in a criminal trial. 720 ILCS 5/14-5 (West 2010). Section 14-5 has been interpreted to be the legislature's expansion of the exclusionary rule and express adoption of the fruit-of-the-

poisonous-tree doctrine in the eavesdropping context. *People v. Rodriguez*, 313 Ill. App. 3d 877, 886 (2000).

¶ 35 Section 14-3, however, identifies certain activities that "shall be exempt from the provisions of [the Act]." 720 ILCS 5/14-3 (West 2010). Section 14-3(h-5) states, in pertinent part, that "[r]ecordings of utterances made by a person while in the presence of a uniformed peace officer and while an occupant of a police vehicle" are exempt under the Act. 720 ILCS 5/14-3(h-5) (West 2010).

¶ 36 Here, there is no question that defendant's statement was recorded while he occupied a police vehicle and that Trooper Bradley was a uniformed peace officer. Nor is there any dispute that Trooper Bradley was not in the squad car when defendant's statement was recorded. Thus, the sole issue presented on appeal is whether, for purposes of the exemption in section 14-3(h-5), defendant was nevertheless "in the presence of" Trooper Bradley when he made the statement.

¶ 37 Our research has not revealed any case addressing the precise issue presented in this case or interpreting what "in the presence" means generally for purposes of section 14-3(h-5). Thus, as a matter of first impression, we interpret the term "in the presence" and decide the related issue of whether that term requires a uniformed peace officer to be inside the squad car when a statement is recorded therein.

¶ 38 In interpreting a statute, our task is to ascertain and give effect to the legislative intent. *People v. Kucharski*, 2013 IL App (2d) 120270, ¶ 28. The best indicator of the legislature's intent is the statute's plain language. *Kucharski*, 2013 IL App (2d) 120270, ¶ 28. If a statute is capable of two interpretations, a court should give it the one that is reasonable and that will not produce absurd, unjust, unreasonable, or inconvenient results that the legislature could not have intended. *Kucharski*, 2013 IL App (2d) 120270, ¶ 28.

¶ 39 We begin our analysis, therefore, by looking at the plain language of the term "in the presence" in section 14-3(h-5). The word "presence" is defined as being in "the vicinity of or in the area immediately near [a person]." Webster's Third New International Dictionary 1793 (1993). The language of the Act itself does not suggest that the legislature intended to ascribe any meaning to the term "in the presence" other than the commonly understood one as reflected in the dictionary. Nor does the legislative history suggest an alternative meaning of the term. Absent some indication of a legislative intent to the contrary, we interpret the term "in the presence," as used in section 14-3(h-5), to mean in the vicinity of or immediately near a uniformed officer.

¶ 40 Applying that interpretation to the facts of this case, we address the question of whether the term "in the presence" required Trooper Bradley to have been inside the squad car when defendant's statement was recorded. There is nothing in the language of the Act to support such a limited application of section 14-3(h-5). Had the legislature intended such an application, it readily could have used some sort of limiting language as opposed to the broader, more generalized term it chose. We cannot read into the statute a limitation not expressed. *Board of Education of Waukegan Community Unit School District No. 60 v. Orbach*, 2013 IL App (2d) 120504, ¶ 17. Therefore, we hold that the term "in the presence," as used in section 14-3(h-5), does not require the officer to be inside the squad car when the

recording occurs. Because defendant does not otherwise argue that he was not in the presence of Trooper Bradley when his statement was recorded, we conclude that that requirement of section 14-3(h-5) was satisfied in this case.

¶ 41 Because defendant's recorded statement was governed by section 14-3(h-5) and was, therefore, exempt from the provisions of the Act, the evidence obtained as a result of that statement was not rendered inadmissible under section 14-5. Accordingly, we affirm the trial court's denial of defendant's motion to suppress evidence in this case.

¶ 42 III. CONCLUSION

¶ 43 For the foregoing reasons, we affirm the denials of defendant's motions to suppress evidence in both cases.

¶ 44 Affirmed.